LAW FIRM OF HANSEN & MILLER
ROY E. MILLER ESQ. CASBN# 174821
18 East Fulton Road
Santa Rosa, CA. 95403
(707) 575-1040
Fax:  (707) 575-3826
Email:  hansenmiller@hotmail.com

Attorneys for Defendant
**John Aicega**

UNITED STATES DISCTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

UNITED STATES OF AMERICA,
                    Plaintiff,

Case No. CR 07-0329 SI

MOTION FOR DOWNWARD
DEPARTURE

v.

John Aicega
            Defendant
_____

Defendant John Aicega respectfully submits this sentencing memorandum and is

requesting the court deviate downward from the offense level 30 (as set forth in the plea

agreement) to offense level 25 (normally 57-71 months).  Under 18 U.S.C. 2252A(a)(2)(B), the

mandatory minimum term is 60 months.

///

# PROCEDURAL BACKGROUND

On July 28, 2006, ICE served a search warrant at Mr. Aicega's home in Sonoma County. The warrant was obtained following an investigation in northern Illinois regarding suspected child pornography. Email addresses were found on a computer and subsequently, Mr. Aicega was identified. He cooperated in the service of the search warrant.

**Counseling:** Mr. Aicega is insured through Kaiser and began individual therapy in September, 2006.

**Plea:** Defense counsel conducted due diligence in this matter by reviewing the images at the ICE lab, confirming known victim information and discussing the matter with the government. The result was that Mr. Aicega voluntarily appeared on June 8, 2007 in U.S. District Court to be arraigned on a single charge information under of 18 U.S.C. 2252A(a)(2)(B).

The plea agreement was filed in this court and accepted. At the insistence of the government and pursuant to federal statute, Mr. Aicega was remanded immediately upon the acceptance of his plea.

**Compliance While Incarcerated:** Mr. Aicega has fully cooperated with staff at the detention facility. Due to his past employment and the nature of the charges, he is administratively segregated.

**Government's Position:** Pursuant to the plea agreement, the government will be requesting a lengthy prison term and a $15,000 fine. Pursuant to the plea agreement, there is a prohibition against Mr. Aicega objecting to a ten year period of supervised release. It is anticipated they will vigorously oppose any downward departure.

**Sentencing Recommendation:**  The probation officer's report recommends a period of 97 months incarceration (the minimum amount of time at Level 30); five years supervised release and a fine of $5,000 plus the $100 special assessment.

**Family and Community Support:**  Attached to this brief are numerous letters from former colleagues, family, friends and members of the community.  As with any criminal case, the charge to which someone pleads guilty shows only one aspect of a person's life.  These letters help demonstrate that there is much about Mr. Aicega that is good.

### 3553 FACTORS IN SENTENCING

**Subdivision (a)(1):**  Mr. Aicega acknowledges that the number of photos involved is relatively high.  The plea agreement incorporates that fact.

Mr. Aicega's personal circumstances make it apparent this is a period of aberrant conduct during an otherwise exemplary life.  As noted by his former work colleagues, he was an outstanding probation officer during his lengthy career and went the extra mile in the performance of his duties.

It is also apparent from reviewing the investigative reports that there is zero evidence to suggest that this crime was a symptom of inappropriate behavior with children.

While there are people who may have taken advantage of what was roughly 11 months between the service of the search warrant and plea to flee the country or otherwise seek to avoid punishment, Mr. Aicega instead sought therapy to address the underlying issues he faces.  He did not re-establish internet service nor replace the computer which was seized.  He knew almost immediately how harshly such crimes are punished in the federal system and accepted that such punishment would be forthcoming.  In effect, he was on supervised released from the day he walked into the undersigned's office in early August 2006 until his remand on June 8th.

**Effect of the Charge on Defendant's Life:**  No matter what crime a person commits, there will always be some effect vis-a-vie his standing in the community and with friends and family.  Crimes such as this one are often treated the same as if the defendant had personally acted out with a victim in his home.  He obviously lost his career and a vast majority of his friends.

His family, though devastated by the crime and likelihood of a long prison term is supportive and will be looking after his home and affairs which he is incarcerated.  They intend to help in any way possible to assist him in adjusting to freedom and his supervised release once his term is complete.

**Subdivision (a)(6):**  This court no doubt has seen many cases of this type and is mindful of sentences which have been imposed.

### CONCLUSION

Mr. Aicega fully accepts responsibility for what he has done.  He sought treatment many months before his voluntary surrender and plea to address his underlying issues.  He continues to have the support of his family.  Mr. Aicega respectfully requests the court consider a sentence in the Level 25 range at or above the 60 month minimum term.

Dated:  October 26, 2007

_/s/_____

Roy E. Miller, Counsel for the Defendant

August 25, 2007

Dear Honorable Judge:

I have known John Charles Aicega for thirty years, twenty seven as his sister 'n law. John's oldest brother, Mike, and I have two children, now ages 20 and 23. My youngest is John's name sake. My kids have always enjoyed having their Uncle John around.

I have always found John to be a delight to be with. I find him truthful, kind, reliable and very easy to talk with. What I enjoy most is his wit; how John kids with people.

John is a devoted family man and after a divorce from a marriage of about 14 years, he continues to put his three children, Lori, Brian and Mark, first.    John's children reflect his polite, social and trustworthy personality. I know very well because for many years the Aicega families (between 20-40 people) would gather at our home for the Easter and Christmas holidays. To this day the Aicega families continue to meet for Christmas at our home. This year's gathering at Xmas was a particularly sensitive one. John had informed all of his siblings a couple months prior to December of his conviction. He told us not for his own regret but to warn us of his stupid miss use of the Internet. To give us the option to tell our kids of what can happen if they use the Internet in appropriately. Boy, I think this took guts to tell us. John was truly shook-up and in tears. Again John's honesty and consideration of those he loved took precedence.

Although the 2006 Christmas gathering was upbeat and full of laughter as we enjoyed the twelve children, especially John's first and only grandchild toddle about, there was that rough and intensely sad under current I could feel. At one moment, quite and away from all others, I just hugged John and told him I loved him so much. I said I know that this must be the hardest moment of his life knowing mom and pop might not be alive when he gets out of prison and his children and grandkids will be grown. It was sad to see John's spirit so low. As he cried in my arms, I told him we all loved him and support him. I reminded how well he did in raising his kids. They were well educated, had good jobs, all were self supporting and always were pleasant to be around. He should be proud.

John knows what he did was wrong and regrets it. Knowing John, he learns from his mistakes. I know John has already suffered more than enough. I beg you, Honorable Judge, to please go easy on John. He is truly a very good person.

Sincerely,

Dorothy Mae Miller Aicega
2561 Borica Way
Sacramento CA 95821
(916) 488-7284

August 27, 2007

Honorable Judge Illston
U.S District Court
Northern District of California

Dear Judge Illston

I am writing on behalf of John Aicega, whom I have known for more than 25 years. Over the years, I have observed John to be a loving parent, loyal friend, and dedicated professional. John's priority has always been his three children, who have been an ongoing source of pride, satisfaction and joy. He relishes the time spent with his daughter and two sons, and he loves participating in their activities. In recent years, John has gone from spectator to actually taking the field, as a player on their soccer team. John also likes cooking for the family, and will frequently prepare a casserole, pie, cake or new experimental dish to lighten their load after a long day.

John is attuned to the needs of others and makes an effort to go beyond the norm for a friend. Whether it be donating his time to assist a friend with building a home, trimming a tree, supporting them during times of crisis and emotional hardship, or just remembering an important day; John is there. I shared an office with John and noticed that he kept a calendar, listing birthdays and anniversaries, of not only family members, but of friends and associates; so that he might brighten their day with his remembrance. John likes to make people laugh, and his light hearted humor is evident in his personal interactions.

John's career with the Probation Department was marked by more than 30 years of dedicated service. He always focused on making the best effort for his clients and serving the Department and community with integrity. A Probation Officer is often faced with tragedy, and John's style and way with people allowed him to approach volatile situations with the confidence and sensitivity that encouraged more positive outcomes. John was never reluctant to help a colleague during times of stress, or assume a leadership role when called upon. John was frequently sought out by co-workers for his specialized knowledge of the job and for advice concerning those more complex cases. John has always demonstrated a strong sense of duty, and during his many years with the Department, he proved himself an invaluable asset.

I know John as a responsible, steadfast individual, who has sacrificed and served over the years, and who continues to have solid roots and emotional investment in the community. I thank the Court for its consideration.

Sincerely,

Larry Gardner
Friend and Colleague

August 29, 2007

The Honorable Judge Illston
U. S. District Court
Northern District of California

Your Honor:

Re: John Aicega

I am writing this letter on behalf of Mr. John
Aicega. I have worked with Mr. Aicega for the past 6
years. During this period of time, Mr. Aicega was
always very respectful and courteous when working
with me.

He is a type of person who goes out of his way to
assist and educate his colleagues whenever they have
problems with their work. His work ethics and morale
is excellent in working with youths that are assigned
to his personal case load and in a professional
manner as a Probation Officer. He is extremely
knowledgeable when it comes to his probationary
duties and always accomplishes them expeditiously.

Throughout the years, I have learned quite a lot from
Mr. Aicega about his duties as a Probation Officer.
He has a great positive attitude at work and with his
co-workers and as a friend.

Respectfully,

Lucinda Chung

August 29, 2007

The Honorable Judge Illston
U. S. District Court
Northern District of California

Your Honor:

Re: John Aicega

My name is Martha Rivas. I have been employed 18
years as a Counselor for the San Francisco Juvenile
Probation Department.

I have had a professional relationship with John
Aicega for approximately 18 years. He has always been
personable and very respectful during our
interactions.

I have witnessed Mr. Aicega's working relationship
with youths. He always presented himself respectfully
and caring in the course of his duties.

I personally witnessed Mr. Aicega's work ethic and
devotion to youths assigned to his case load. He
works diligently to reunite youths with their
families within the scope of his authority. Mr.
Aicega has a positive work rapport with youths and
co-workers.

Respectfully Submitted,

Martha A. Rivas

August 30, 2007

To: The Honorable Judge Illston

Dear Sir,

I am writing this on behalf of my brother John C. Aicega, who is scheduled to be sentenced in your court on September 14, 2007.

I am 60 years old. My brother John is three years younger than me. We both come from a close knit family, Mom, Dad, and six kids. Aside from this guilty plea, I know absolutely nothing that I can say that would reflect negatively on my brother. All of the children in our family graduated from college, worked and raised their own children, and have lead normal productive lives.

John graduated from high school and Chico State College. He participated in sports and held jobs throughout his school years. At college he was both on the wrestling team and on one of the nations only boxing teams.

Soon after college he began working as a probation officer in San Francisco, a job he held for over 30 years. John participated extensively in raising his three children. Some have graduated from college; one has served in our armed forces. Everything that I know from his entire life indicates that he has been an exemplary person. This tarnish to his life history is an aberration that goes against everything that I know and feel about him.

I pray that you will give weight to my pleadings and those of other family members and friends. Additionally I ask that you consider his parents, who now in their middle 80s. Thank you for taking the time to read and consider my plea.

Yours Sincerely,

Michael Aicega Jr.

Michael M. Aicega Jr.

Stephen L. Aicega
4968 Newanga Court
Santa Rosa, CA  95405


The Honorable Susan Illston                                    August 30, 2007
United States District Court
Northern District of California
450 Golden Gate Avenue
Courtroom 10, 19th Floor
San Francisco, California 94102

Dear Judge Illston:

I am writing to ask for leniency on behalf of John C. Aicega who is to be sentenced
before your court on September 14, 2007.  My name is Stephen Aicega, and I am
John's 51 year old brother.  I have been employed with the State of California as a Tax
Auditor and Tax Compliance Representative since 1979.

John, now retired, was a dedicated and hard working public servant with over thirty
years service with the City and County of San Francisco.  I have known John to be a
prudent, conscientious, hardworking and a caring person.

Though divorced, John had shared custody of his three children with his ex wife,
Debby.  When my wife and I first moved to Santa Rosa in 1987, John and his kids
stayed with us 3 days a week, until John moved into a rental house he owned.  His
kids are now adults with families of their own.  John has always been a proud father,
and now grandfather.

John has always been generous; he found time to help family and friends in need.
When our youngest brother purchased a house, John was there to help with the
painting.  When our sister needed pruning done to her trees, John was there to help.
I am sure John has spent hundreds of hours helping his kids work on their houses.
When my wife Shirley was diagnosed with cancer, it was John who drove us to UCSF
Medical Center, and sat with me through the successful surgery.

When John explained his situation to me he indicated that he was very disappointed
in himself and his actions.  I am certain that when he regains his freedom, he will
never repeat this kind of behavior again.  I am aware that John has had counseling to
deal with his situation.

Aside from this transgression, John has been a good man and father.  I urge you to
offer John the greatest leniency possible so that he and his family can rebuild their
lives.

Thank you for your consideration,

Sincerely,

Stephen L. Aicega

Shirley Aicega
4968 Newanga Court
Santa Rosa, CA  95405

August 30, 2007

The Honorable Susan Illston
United States District Court
Northern District of California
450 Golden Gate Avenue
Courtroom 10, 19th Floor
San Francisco, California 94102

Dear Judge Illston:

I am writing on behalf of John C. Aicega who is to be sentenced before your court on
September 14, 2007.  Please consider leniency in your sentencing of John as he has shown
remorse for his actions that bring him before you.  I have seen a change in John since this legal
ordeal has begun for him.  I see in John true remorse for his actions (not for getting caught).  He
will be a better son, brother, father and grandfather for having faced this transgression and
getting help to change his behavior.

My name is Shirley Aicega.  I am John's 49 year old sister-in-law.  I have been employed with
Kelly Moore Paint Company as a bookkeeper since 1998.

 I have known John since 1980.  I have watched John raise his 3 children well.  They all are
responsible adults.  Two are married with children of their own.  All work hard and are a joy to be
around.  John and his children lived with us part time for a few years starting in 1987.  I saw
John make many personal sacrifices to see that his children were well cared for.   Family has
always come first with John.

When someone has a need in the Aicega family, John is one of the first people you contact for
help or just emotional support.  In April of 2005 I was diagnosed with cancer.  John was the first
person my husband and I went to.  He is also the person who worked in San Francisco till
midnight on Sunday night and drove back to Santa Rosa and picked us up at 4:30am to take us
to UCSF Medical Center for my surgery.

While this is a serious matter before you today I would urge this court be lenient in your
sentencing of John.

Thank you for your consideration.

Sincerely,

*Shirley Aicega*

Shirley Aicega

Honorable Judge Illston,

I am writing this letter on behalf of Mr. John Aciega, a former co-worker of mine from the San Francisco Juvenile Probation Department for 20 years.  Mr. Aciega had good rapport with his co-workers.  He was a conscientious probation officer with a good sense of humor and in my 20 years of working with Mr. Aciega, he had never spoken out in anger to anyone.

On many occasions, I had played basketball games with Mr. Aciega and although he was not an experienced player, he always played to the best of his abilities.  Also, I could always count on Mr. Aciega should I need assistance with youths in my caseload.

It is regrettable but I truly believe that Mr. John Aciega's present dilemma is an isolated incident and was brought on by a lack of good judgment.

Very Truly Yours,

Juvenile Probation Officer, Retired
Henry Wong

September 17, 2007

The Honorable Judge Illston
Judge of the United States Federal Court
Northern District

Dear Judge Illston:

I have known John Aceiga, retired probation officer, since 1988. I started working at the Youth Guidance Center Medical Clinic in 1988 and collaborated with many disciplines as well as probation officers to provide the best care for youth in detention and for those going to private placements. Mr. Aceiga was always very cooperative and exhibited genuine concern and dedication in helping the youth in the Juvenile Justice System.

In the last seven years, I have worked as a Public Health Nurse, working very closely with the private placement unit of the San Francisco Juvenile Probation, where Mr. Aceiga worked prior to retirement. I was able to observe his dedication, integrity and professionalism because I was involved in the medical follow-up of youth in placements.

I am saddened and in a state of disbelief to hear of the serious charges he is facing. I strongly belief that Mr. Aceiga's involvement in this negative behavior can be resolved by rehabilitation rather than incarceration, since he is not a threat to the community. I urge the court to consider leniency at sentencing for a gentleman who has earned merit in the numerous years of service provided to youth in the Juvenile Justice System.

Sincerely,

Anna Grajeda, RN, PHN, MSNc
1350-46TH Avenue
San Francisco, CA 94122

August 10, 2007

Judge Illston
US District Court
Northern District of California

Dear Judge Illston,

I first met John Aicega when I began working as a San Francisco Juvenile
Probation Officer in 1981. As a professional colleague, I soon discovered that I
could count upon him for help whenever needed. It never mattered how crowded
his schedule may have been. When I asked for his help I always got it without
hesitation. I quickly learned how reliable and trustworthy John was. I choose my
close friends carefully and John quickly became a close friend. He helped me in
my personal life whenever I asked and often when I didn't ask. When I mentioned
that I needed to go to Southern California to move my elderly parents, John
insisted on accompanying me. Together we moved my parents and cleaned out
their home. When my own home needed exterior paint, John and I were the ones
who painted it. Of course John would take no compensation. He was giving of his
personal time as well as his spirit and support.

Over the years I observed John being a devoted father to his children. When
finances were low, John worked three Jobs in order to provide adequate income.
I attended many picnics he held for his children, extended family, and friends; all
of which he paid for and did the cooking himself.

If I needed to trust my life to a friend, it would be John Aicega.

Very Truly,

David Hodges
32 Mizpah Street
San Francisco, CA 94131-2929



4662 Precissi Lane
Suite 200
Stockton, CA 95207
(209) 955-2277
Fax (209) 955-2286

August 10, 2007

TO WHOM IT MAY CONCERN:

Harrison Homes, Inc., has been working with and accepting juveniles from San Francisco Probation Department for the past sixteen years. During the years John Aicega was in the Placement Unit, he visited the boys in our program at least once a month. Mr. Aicega established and maintained an outstanding rapport with the boys in our program.

John's concern and dedication to our youth contributed greatly to their success and graduation from our program. In the years I worked with John, he always conducted himself with integrity and professionalism.

 If you have any questions, please contact the undersigned.

Sincerely,

Steve Ajlouni
Program Director

August 14, 2007


To Judge Illston:

My name is Connie Perez and I am writing concerning my
brother John Aicega. My brother has some important character traits
that I would like describe.  I feel he has shown over the years that he
is hardworking, generous and that family is extremely important to
him.

As my brother began his career a number of years ago he not
only worked full time, but also took on a number of part-time jobs to
help support his family.  He was always willing to help family and
friends with odd jobs and asked nothing in return.  About ten years
ago we had a painting job and could use some help.  We only had to
give John a call and he was there to help.  Once he even climbed a
large tree in our yard to install an antenna for us.  He has helped
other family members in the same way.

Generosity is almost a fault with John.  He has helped friends in
need with loans at times. When my younger son was born he was
sent to Children's Hospital in Oakland, a four-hour trip for me.  John
and his wife didn't hesitate to insist that we stay with them while my
son was there for over a month.   What I remember most fondly is
how he would drop by with my favorite chocolates as an unexpected
surprise on many occasions.  He frequently would remember our

mother's birthday and Mother's Day with wonderful bouquets and her favorite chocolates as well.

Family is a focus in John's life.  His children and grandchildren are his greatest pleasures.  He made sure after his divorce that he spent as much time as possible with his children.  He has made a point also to keep in close contact with our parents, especially in the last few years.  If I was visiting, John was always willing to share his time with me, a trip to the city or beach he would be available to be our tour guide.

Even though John has made a serious mistake, I think that what he has done with his life shows that he is a person of good character and has contributed to society and to his family in important ways. I respectfully ask you to consider this as you make a decision on his sentence.

Sincerely.

Connie Perez

August 16, 2007

Horst F. Bauer
3075 Cesar Chavez Street
San Francisco, CA 94110

The Honorable Judge Illston
United States District Court
Northern District of California
San Francisco, California

Re:  John Aicega - Sentencing Hearing, September 2007.

Your Honor:

John Aicega was my co-worker at the San Francisco Juvenile Court for nearly three decades.  During this period, John was a competent and conscientious colleague who invariable acted in the best interest of the juveniles in his care.  His conduct with parents and youth was above reproach.

Although the matter before the Court represents a terrible lapse of judgment, I know that John's offense is contrary to his conduct during many years of service to the youth of San Francisco.

I hope, the Court will consider his prior conduct and service when passing sentence.

Respectfully submitted,

Horst F. Bauer
Sr. Probation Officer, retired (1997)

August 16, 2007

Judge Illston
U.S District Court
Northern District of California

RE: John Aicega

Dear Judge Illston:

I am writing you in support of Mr. John Aicega and hopefully give you another perspective into his character. I have known Mr. Aicega as a colleague and friend for 27 years. He has always been a person who makes himself available to help and assist people in their time of need.

In one particular instance in 1989, after just having purchased my home, Mr. Aicega availed himself to assist me in needed repairs that I could not afford to hire outside help. It was Mr. Aicega's suggestion to assist me as he realized I had some personal financial issues which prevented me from doing these much needed repairs to my first home. This was not unusual for Mr. Aicega to offer his assistance without being asked, albeit, not just for myself but for other persons in need.

I realize it is the court's position to administer justice in a fair and impartial way. While I am in no way trying to minimize the current status and circumstance of Mr. Aicega currently appearing before your court, I would hope that his overall history of goodwill whether it was serving his family, friends and community can be strongly considered in the court's final judgment.

I will continue to stand by Mr. Aicega during these difficult times. I know for a fact that I am not alone in my feelings and characterizations of John. Hopefully the court can obtain some insight into my feelings and hopes for John's future. I am sure he can contribute much in a positive way through the remainder of his life. Knowing John as I do, I am certain he will accept the challenge to proving to the court and to himself and others that he will change and has much to contribute to society.

I want to respectfully thank the court for its indulgence and allowing me to state my continued support of Mr. Aicega.

Sincerely,

Gary L. Harding

Address: 18 Michael Court
          San Carlos, CA 94070

Gary Moline
1352 Oak View Circle #210
Rohnert Park, CA 94928

August 18, 2007

Judge Susan Illston
Ninth U.S. District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

RE:  John Aicega

Dear Judge Illston:

As I prepare to compose this letter, I am deeply perplexed, torn and saddened. When I read in the
local newspaper about John Aicega admitting to the charge for which he is now before your court, it
took several days before I could accept the news.  I said to myself repeatedly: "This could not be the
same John Aicega I have known for over thirty years."   I would like to express the reasons for this
apparent false assumption.

Mr. Aciega and I worked together with troubled teens for some thirty years.  He was an outstanding
co-worker and subordinate during this time.  His work ethic and level of effectiveness were excellent,
but, more importantly, his relationships with the youth, their families, co-workers and placement
facility personnel was exemplary.  He was highly respected by his co-workers, most of his
supervisors, and the court wards he supervised in their homes or placement facilities.  At one time
early in his career, his peers voted him to be the most admired person in the department.

During the last thirteen months before I retired in 1999, I was Mr. Aicega's immediate supervisor in
the Placement Unit of the San Francisco Juvenile Probation Department.  His responsibility was to
screen court wards for appropriate placement in private facilities throughout the United States.  He
also supervised up to approximately 40 youth in various facilities.  I had the responsibility to
accompany Mr. Aicega on several placement facility visits in California and Colorado.  My
impression in each of our visits was that Mr. Aicega was highly competent in dealing with staff and
the court wards.  He was able to manage crises extremely well, and his opinion and
recommendations were highly respected.  He related to the wards especially well, and he repeatedly
demonstrated the ability to calm agitated minors and even staff in highly conflicted situations.  He
was always mindful of the "best interests" of wards he placed and supervised.

I also knew John Aicega as a friend and co-commuter for many years.  While he tended to be a
somewhat private person, Mr. Aicega and I did share many details and stories of our family lives as
well as mutual friendships.  One thing that stood out during our many conversations was his abiding
love for his three children - all of whom are now adults.  He kept in touch with each of them on a
regular basis, and he constantly cultivated his relationship with them.

I have no idea when John began his involvement with child pornography, but I can say that I saw no
evidence of this behavior during the time I worked or associated with him.  I was, indeed, absolutely
shocked to learn of this offense.  My heart especially goes out to the many victims in this matter,
including his own adult children and their families.

I hope this sheds some light on the character of Mr. Aicega.

Sincerely,

Gary Moline

August 20, 2007

Honorable Susan Illston
United States District Court
19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Judge Illston,

I write in behalf of John Aicega from the perspective of a co-worker and friend for over thirty years.

As you may be aware, prior to his retirement about one year ago, John was a career employee of the San Francisco Juvenile Probation Department. Beginning in the early 1970's, John served as a Juvenile Hall Counselor and, then, as a Juvenile Probation Officer. His reputation was that of a dependable and highly competent worker. His clients, management, and members of the public had a good relationship with him.

John had a good relationship with his co-workers. He could always be counted on to assist other officers when needed and to help out with any kind of task associated with events sponsored by our employee association.

When his family was young and his marriage was still intact, John worked at several extra jobs to provide for his wife and children. I recall that for several years, he drove a motorized cable car on nights and weekends for a local tour company. In addition to that, he did home repairs and other types of physically demanding work, such as trimming and topping trees, to earn extra money for his family.

For the benefit of his wife and children, he moved from South San Francisco to Rohnert Park to give them an environment with nicer weather and a more family-oriented community. In so doing, he traded an easy commute for a very arduous one. Yet, he continued to work at second and third jobs.

Page 2
Letter to Judge Illston

I admired his willingness to sacrifice his time, energy and personal comfort for the benefit of his wife and children.

I don't know what led him to involvement in the illegal activity to which he has admitted, but I do know that it appears to be out of character for him to be anything but a law-abiding and contributing member of society. He is the kind of person who can be relied upon to keep his word and pay his debts. I hope that he can be extended the opportunity to prove to the Court that he is worthy of a grant of probation, if that is permissible under the circumstances.

I continue to be employed as a probation officer by the San Francisco Juvenile Probation Department.

Sincerely,

Rich Perino
2991-24[th] Avenue
San Francisco, CA 94132

PAULINE M. TAINI
Deputy Probation Officer
San Francisco Juvenile Probation
375 Woodside Avenue
San Francisco, California 94127

August 20, 2007

To:  US District Judge Susan Illston

I am writing on behalf of my friend and previous co-worker, John Aicega who will be appearing before you on September 14, 2007 for his Sentencing Hearing.

I have known John for the past twenty plus years.  We worked together in the same unit for twelve years.  We both worked in the Private Placement Unit which supervises youth in group homes and foster homes.  I would like to write about John as I have known him as a co-worker and probation officer, and as a friend.

John was, in my opinion, an excellent Probation Officer,  he knew the job and all it's duties and responsibilities expertly, he wrote copious notes, saw his clients every month, and had a genuine caring for his clients that was reciprocated.  John was also a team player and was always willing to help out his co-workers.  I have never known John to behave inappropriately towards his clients and their families.  I know of no disciplinary actions toward him.  And often in this building, knowing of other's disciplinary problems is quite common.  John was generous and thoughtful to both his clients, their families and his co-workers in many ways.

As a friend, John would always remember my birthday and more importantly to me, my mother's birthday.  After she passed away, John knowing that I loved my mother's southern fried chicken, took me to a restaurant that is known for their fried chicken .  We started to go to the same restaurant every year on my mother's birthday in celebration of her.  That was John's idea.

I write you all this to try and show you another side to John.  I was shocked and saddened in learning about John's arrest and charges.  I do not condone or want to minimize the serious nature of the charges to which John has plead guilty.  However, in my correspondence with John, he seems greatly humbled and shamed by his behavior and it's consequences.  I respectfully request that you strongly consider the least possible sentence and I thank you for taking the time to read this letter in support of John.

Respectfully yours,

Pauline M. Taini

To:      Judge Illston
         US District Court
         Northern District Of California

From:  Terry G. Federico

Re:      John Aicega

Honorable Judge Illston:

I'm writing this letter  of support for John Aciega, as I have
been acquainted with him for nearly 32 years and have
considered  him as a friend for nearly 20  years.

I'm a retired Juvenile Probation Officer for the City and
County of San Francisco (1975 - 2003).  I worked for Pacific
Telephone Company for seven years, served two years in the
U.S. Army and graduated with a B.A. from S.F. State
University prior to being employed as a Probation Officer.

I became acquainted with John through my employment as a
Probation Officer.  I always respected his work ethic as I
observed him to be responsible and willing to go the extra
mile in carrying out his duties as a probation Officer. He was
always willing to help other's in carrying out their
assignments and was  not one to avoid difficult assignments.

I didn't have the opportunity to work in the same unit and/or regularly with John, until the last five months, of my career. During this time we shared the duties of the night duty intake probation officer.  During this time, it was obvious that I had been right about his positive work ethic.  In this capacity, It was critical that we work closely, especially on weekends.  We were the sole on duty representatives of the probation department for evening hours and  entire weekends. Often times, we had to complete each other's on going investigation of cases and make final decisions with regard to detention and/or release of these cases/suspects referred by law enforcement agencies and /or other emergencies.  He always made an excellent effort to complete  the tasks at hand, during his shift and I found that I very seldom if ever disagreed with his decisions.


I am not a person who readily makes close friends and didn't start developing a friendship with him until about 1987. I was particularly impressed by his willingness to lend a helping hand to his friends and others. In 2001,  John and one other probation officer appeared at Kaiser Hospital in June 2001 and spent the day with myself and my family, as my wife endured a 7 hour surgery for pancreatic cancer.  At this time, I hadn't actually worked in the same unit as John and this was a Monday, which usually is a very busy day for probation officer's. He was also very supportive during the next year of

my wife's life. He often times would volunteer ,at a moments notice, to work my shift as the night duty intake P.O.; when my wife was in need of my care.

Lastly, following my retirement, I was hospitalized twice within 3 weeks in March 2004 for diverticulitis and surgery. Upon hearing this, John visited me during each hospitalization. Despite his busy schedule and having to travel 50 miles from his home to Kaiser Hospital in Oakland, Ca.; John took it upon himself to transport me home upon each hospitalization and made sure I had food during my convalescents. Needless-to-say, I place a high value on John's friendship.

While I'm shocked and detest the offense, for which, John is currently before the Court; I will continue to extend my support to him and feel confident, he will approach his future in a positive manner.

Sincerely;

Terry G. Federico

To Judge Illston,

I have known John Aicega for more than 20 years. I have been close friends with his daughter Lori since elementary school. Growing up I spent many nights at his house (many times in very close quarters) and at no time did anything inappropriate ever occur. John has always been a very free spirit, many would say not your typical straight laced father, but at no time did I witness or suspect behavior that would be deemed illegal or questionable.

John contacted my husband and I personally after this incident occurred to advise us of what he had done and to personally apologize for his actions. He took full responsibility and wanted to make sure we knew that his behavior while illegal and extremely inappropriate never went farther than viewing images on the computer. At no time did I worry that anything had happened with any children he had been around. John has always been very active in his children's lives (especially his daughter's and her many sports activities) and has grown close to many of her friend's and their children. John was extremely remorseful not only for his actions but for the pain it has caused his family. He immediately recognized the error of his way and attempted to rectify the situation as best as possible. John has been nothing but apologetic and humble during the entire experience, recognizing how badly he messed up and wanting to take whatever punishment the courts deemed appropriate rather than trying to fight the charges (as many of us encouraged him to do.)

It deeply saddens me to know that John is facing incarceration for many years and will miss out on many milestones in his children's and grandchildren's lives. Having two children myself I am disgusted at John's actions and do not condone his behavior in any way. However, knowing John I do not feel that prison time will have any sort of positive affect. I do not believe that John will ever relapse and repeat his behavior. All prison will accomplish is putting his family through more needless pain and suffering.

It makes me sad to think John will spend more time in prison than many child molesters and pedophiles. Working in law enforcement myself I receive information about 290 registrants who are now residing in our city along with their crime and amount of time served in jail or prison. It saddens me to know that a person can be convicted of far more serious sexual crimes against children and spend considerably less time in prison and many times only jail and then be released back into society. It is my understanding that federal statutes mandate a minimum of 5 years for the crime John has pled to and a maximum of 20 years. While I do not feel that any prison time is appropriate in this case I can only hope that you will see what we all do in John and realize that he is not a danger to society or a risk of recidivism and be as fair as possible in his sentencing.

Thank you for your time in this matter.

Sincerely,

Jennifer Johnson

August 27, 2007

Judge Susan Illston
Ninth U.S. District Court
450 Golden Gate Avenue
San Francisco, Ca. 94102

Dear Judge Illston,

I am writing to you in support of my father John C. Aicega. I lived with him for 26 years and for five years it was just my dad and I living in the house. I moved out in Oct 2002.

My dad has always been a committed father and friend to me. When I was five years old my parents decided to move out of San Francisco to raise us in a more family oriented city. This meant that he would commute over two hours each day to make sure that our family was safe. As my brothers and I were growing up he worked long hours and often times worked two and three jobs to provide for our family. He drove a cable car and painted houses to name a few.

When I was eleven, my parents divorced and my dad changed his work schedule to four ten-hour days so that he could spend time with us on the weekends. I never truly appreciated how much he sacrificed for my brothers and I. As I grew older I became more aware of how generous my dad was. He was never too busy to help someone paint their house, cook dinner for his family, make a last minute run to the store for school clothes/supplies, give rides to/from the airport, etc.

On February 9, 2002, during my first year of teaching, I had a compound fracture of my right ankle. I spent 2 ½ hours in surgery and woke up to see my dad sleeping by my side (in an uncomfortable hospital chair). I will always be grateful for him being there when I woke up. Over the course of the next four weeks, he took several days off work to tend to me at home and take me to doctor's appointments. He drove me back and forth to Fairfield at least four times during the last two weeks to stay with a co-worker as I couldn't drive. But the most touching thing was on my birthday, March 4. I was very sad because I wasn't going to spend my birthday with my dad, after all he had done for me the previous two weeks. He worked all day in San Francisco, drove to Fairfield and surprised me with flowers, candy, a birthday cake, and of course himself. I cried because I knew how incredibly lucky I was to have him for a dad.

Although I will never fully understand the reason that he finds himself before the court today, I can say with much certainty that it will never happen again. I know this because I see the pain and remorse in his eyes every Saturday when I visit him. He is very clear that there is a long, hard road ahead of him. I do not want to minimize the seriousness of the events that led my father before your court today, however, I do ask that he is given an opportunity for probation, if permissible, and that he repays any debt either monetary or through community service.

Sincerely,

Lori Garcia

August 1, 2007

Sentencing Judge
United States Federal Court
Northern District

Re: John Aicega

Your Honor,

John Aicega and I have been friends since meeting at the Youth Guidance Center in 1980. I worked for the Department of Public Health as the Office Manager and then Eligibility worker for the Medical Clinic. I am now retired.

In the 27 years that I have known John, he has been a great co-worker and great friend. We have also gotten to know each other's families outside of work and gotten together many times.

John has always been dependable and trustworthy. He is someone I could count on and would not hesitate to call in an emergency, whatever the situation may be.

Although I was very distressed and in disbelief to hear of his arrest on this obviously serious charge, I urge you to consider whatever leniency you can at sentencing.

Jeanne Brandt
458 Loma Vista Terrace
Pacifica, Ca.
94044

July 16, 2007


Judge Illston
Federal Courthouse
400 McAllister
San Francisco, Ca.

RE:  Case # CR 07-0329

Your honor, the defendant in this case is John Aciega.  I have known John for over 30 years.  We have worked together as Juvenile Probation Officer's in San Francisco.  I was shocked and dismayed when I read the newspapers to learn that he was arrested on such horrible charges.  I do not condone child pornography nor feel sympathy for the accused.  But with John's case I have been in turmoil, I always liked and respected John and never in my wildest thoughts would I have imagined that he would be remotely involved in such behavior.

John has always been the person I went to when I needed a reasoned and logical explanation toward my understanding of a difficult life situation.  He helped me when my brother became manic-depressive and disappeared.  He advised me on how to get my brother's state benefits reinstated so he could be hospitalized and treated.  And through the years he has repeatedly inquired about him.

In the early 1980's John and I became part of the Intake unit that specialized in sex-offender cases.  We interviewed the youth, took them to court and wrote court reports for these teens that had such serious offenses.  We went to trainings together and spoke often about these youth and their treatment plans.  John was particularly clear-cut with these youth; he did not tolerate any deviation from their court plans.  In fact, as a Probation Officer, John was strict and held his charges accountable to the court's plan and also to what his expectations were.

With John going to sentencing in September, I have been trying to understand what happens with a fellow like John, who is respected, is a fair-minded person and has a loving family?  What occurs deep inside them to rationalize child pornography as an okay outlet?  Is it a sexual or power dynamic or just loneliness?  As you can see, I have numerous questions, which so far I have not found an answer for.

Thank-you for reading this letter.  As you will be sentencing John, I ask that you provide him with security in his incarceration.  He will need to be safe from others, because he may be housed with people that he requested their incarceration when they were teens.  If

Page 2


there is any treatment programs or counseling programs, I believe he would be a good candidate for them.  At first, he maybe reticent but I think he will benefit from them.  If by some slim chance he could be released back to the community on a strict supervised program, John would be an excellent candidate for that also.  With GPS systems, daily check-ins and supervised free time I believe that he could once again be a valid person in his community.



Sincerely,


Evelyn Oltman
Deputy Probation Officer
375 Woodside Ave.
San Francisco, Ca.
        94127

June 25, 2007

To: Sentencing Judge
United States Federal Court
Northern District
Re: John Aicega

Your Honor,

I was shocked and saddened to hear of the charges and the admission to a serious crime by my former colleague, John Aicega. I have known Mr. Aicega since 1973 when he came to work for the San Francisco Juvenile Probation Department as a Juvenile Hall counselor. Mr. Aicega later became a Probation Officer with the Department. He was a co-worker of mine both in Juvenile Hall and later Probation. In the last seven years of my career, I was an administrator and I retired in 2005 as Assistant Chief Probation Officer after serving 8 months as Interim Chief.

Certainly, the nature of his admission is disturbing. I spent a number of years investigating and supervising juvenile sex offenders, which included interviewing victims. I know first hand the damage caused by the exploitation and victimization of children. And while it is my understanding that Mr. Aicega was not accused of touching or assaulting anyone, I do not minimize the need for strong sanctions for those who would provide a market for victimized children.

I wish to speak about Mr. Aicega, the man that I knew. Mr. Aicega was very professional, one of the best Probation Officers in the department. He knew the laws, the rules, and the policies. His reports were outstanding and always on time. Moreover, he was wonderful with the clients. The probationers and their families liked and respected him. And he was always one to be helpful to others. If someone needed assistance John Aicega could be counted on, whether help in moving furniture, donating blood for an ill relative or simply offering someone a ride; John was a person you could count on. He did his job and went home to his family.

John Aicega is a good man who got involved in bad behavior. I urge you to consider whatever leniency you can at sentencing. I do not see Mr. Aicega as a threat to the community, but I understand there are minimum sentence requirements. I would hope that your Court would impose the minimum.

Respectfully,

William M. Johnston
554 Marin Ave.
Mill Valley, Ca. 94941

To The Honorable Judge Illston                    8/28/07
US District Court
Northern District of California

                                          RE.   John C. Aicega

                                          PFN: ULJ777

Your Honor,
        My name is Daniel Hicks and I am
a retired supervising probation officer for the
City and County of San Francisco Juvenile Court.
I have known John C. Aicega both personally
and professionally for the last thirty three
years. I have worked with him as a
juvenile hall counselor, a probation officer and
as his supervising probation officer durring
that time.
        To my knowledge and observation,
Mr. Aicega has always acted in a courteous
and professional manner on the job with court
wards, parents, co-workers, and child care
professionals in the field. Mr. Aicega has never
had a complaint lodged against him for any
type of inappropreate behavior on the job or
otherwise since I have known him. I
have personally observed Mr. Aicega perform
outstandingly in life threatening situations.
In one such incident, he thwarted an escape
attempt by a suicidal court ward. Mr. Aicega
was able to diffuse the situation, talk the
minor from jumping off the third story roof

of the juvenile hall and successfully take him back into custody without further incident. His career was unblemished and admirable.

Now, by his own admission, he stands before you as a sex offender.

I can make no excuse for his recent behavior nor understand his drastic character change. I can only feel that somehow, something within him "snapped". John must have lost the connection between the images he viewed and the true victims in this case, sexually exploited children.

I believe John is not a preditiory sex offender as he had thirty three years of opportuinity to act on his fantasies and chose not to do so. He was a man who could maintain self control and is not a danger to the community nor a flight risk. He may now realize realize his need for theraputic intervention and be a willing subject for such treatment.

In closing, I would like to say that this was no easy letter to write. It seems that it's always the "gray areas" that haunt our profession. I hope you will be able to help John, and may God grant you the wisdom to do what is just for all. Thank you.

Respectfully yours,

David J. Hicks

DANIEL J. HICKS
737 SAN BRUNO #7
BRISBANE, CA. 94005
(415) 467-5236